# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

**U.S. DIAMOND & GOLD D/B/A
STAFFORD'S JEWELERS, et al.,**

                  **Case No. C-3-06-371**

    **Plaintiffs,**

                  **Judge Thomas M. Rose**

**-v-**

**THE JULIUS KLEIN DIAMONDS LLC, et al.,**

    **Defendants.**

---

### ENTRY AND ORDER OVERRULING JKD'S MOTION TO DISMISS
### AND GRANTING JKD'S MOTION  TO STRIKE (Doc. #11)

---

This complaint arises from the alleged disappearance of a 5.56 carat, fancy intense pink diamond (the "Pink Diamond"). Plaintiffs allege that the Pink Diamond was initially owned by Plaintiff John Stafford ("Stafford") and then sold to Plaintiff U.S. Diamond & Gold d/b/a Stafford's Jewelers ("Stafford Jewelers") (referred to herein collectively as the "Plaintiffs"). It was allegedly valued in excess of $1.5 million.

As a result of the Pink Diamond's disappearance, Plaintiffs have brought a nine-count complaint. Count One is against Defendant Julius Klein Diamonds LLC ("JKD") for negligence. Count Two is against JKD for breach of contract. Count Three is against JKD for unjust enrichment. Count Four is against JKD for conversion. Count Five is against JKD for civil liability for criminal acts. Count Six is against JKD for fraud. Count Seven is against JKD for replevin. Count Eight is against defendant Jewelers Mutual Insurance Company ("Jewelers Mutual") for a declaratory judgment and Count Nine is against Jewelers Mutual for breach of contract.

This Complaint was originally filed in the Court of Common Pleas of Montgomery County, Ohio. It was then removed to this Court by JKD and Jewelers Mutual based upon this Court having diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Now before the Court is JKD's motion to dismiss and to strike portions of the Complaint. (Doc. #11.) This motion is now fully briefed and ripe for decision.

In its motion, JKD seeks to dismiss the counts against it for a lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). JKD also seeks to dismiss Count Six of the complaint for failure to state a claim upon which relief may be granted. Finally, JKD seeks to have certain language struck from the complaint pursuant to Fed.R.Civ.P. 12(f). Each branch of JKD's motion will be addressed seriatim.

## I.      PERSONAL JURISDICTION

In the first branch of its motion to dismiss, JKD argues that this Court lacks personal jurisdiction over it. The relevant law regarding personal jurisdiction will first be set forth followed by a background of jurisdictional facts and an analysis of the motion.

## A.      Relevant Legal Standards

When a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2) is made, the plaintiff has the burden of proving that jurisdiction exists. *Burnshire Development, LLC v. Cliffs Reduced Iron* Corp., 198 Fed.App'x 425 (6th Cir. 2006) (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996). As a part of the burden of proof, the plaintiff's burden of persuasion depends upon whether the court conducts an evidentiary hearing on the motion to dismiss.

When an evidentiary hearing is held, the plaintiff must establish jurisdiction by a

preponderance of the evidence. *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003). When there is no evidentiary hearing, as is the case here, the plaintiff must make only a prima facie showing and the pleading and affidavits, when in conflict, are viewed in a light most favorable to the plaintiff. *Burnshire*, 198 Fed.App'x at 429.

Federal courts apply the law of the forum state when determining whether personal jurisdiction exists. *Id.* (citing *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). First, the federal court must determine if the law of the forum state, Ohio in this case, provides personal jurisdiction. *Id.* If so, the federal court must then determine if the personal jurisdiction comports with due process.

## 1. Personal Jurisdiction Under Ohio Law

The Sixth Circuit has explained that there are two kinds of jurisdiction that can be exercised, general jurisdiction and specific jurisdiction. *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006). General jurisdiction exists when the defendant's contacts with the forum state are "substantial" and "continuous and systematic," such that the state may exercise personal jurisdiction even if the action does not relate to the defendant's contacts with the state. *Youn*, 324 F.3d at 418. Specific jurisdiction exists when the contacts giving rise to jurisdiction relate to the claim that is before the court. *Id.*

## a. General Jurisdiction Under Ohio Law

Whether Ohio permits general jurisdiction is an issue raised by the parties. In *Brunner*, the Sixth Circuit panel says that both general and specific jurisdiction may be exercised under Ohio law. *Brunner*, 441 F.3d at 463. For this authority, *Brunner* cites *Nationwide Mutual Insurance Co. v. Tryg International Insurance Co.*, 91 F.3d 790, 793 (6th Cir. 1996). However,

the Sixth Circuit panel in *Nationwide* does not specifically say that both general and specific jurisdiction may be exercised in Ohio.

The Sixth Circuit panel in *Nationwide* says that, "[j]urisdiction may be found to exist either generally, in cases in which a defendant's 'continuous and systematic' conduct within the forum state renders that defendant amenable to suit in any lawsuit brought against it in the forum state, or specifically, in cases in which the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum." 91 F.3d at 793. No mention is made of Ohio with regard to this general statement although the venue in *Nationwide* lied in Ohio. The panel in *Nationwide* went on to address and find specific jurisdiction under Ohio's long-arm statute and no further mention was made of general jurisdiction. *Id.*

In another Sixth Circuit case, the panel of judges evaluating personal jurisdiction in an Ohio diversity case determined that "a federal court has general jurisdiction … ." *Youn v. Track, Inc.*, 324 F.3d 409, 417-18 (6th Cir. 2003). As authority for this conclusion, the court cites the Supreme Court case of *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952).

In *Perkins* the Supreme Court held that whether Ohio courts are open to a proceeding in personam "rests entirely upon the law of Ohio, unless the Due Process Clause of the Fourteenth Amendment compels a decision either way." 342 U.S. at 440. The Supreme Court then conducted a due process analysis and not an analysis under Ohio's jurisdictional law. *Id.* at 445-49.

The *Youn* court also relied upon the Sixth Circuit case of *Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002), wherein the court analyzed general jurisdiction in an Ohio case. *Id.* at 873. However, as authority for this analysis, the *Bird* court referred to the Sixth Circuit case of *Third*

*National Bank In Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087 (6th Cir. 1989), *cert. denied*, 493 U.S. 1058 (1990), wherein the Sixth Circuit was analyzing personal jurisdiction in Tennessee where state law permits general jurisdiction. *Id.* at 1089.

Two District Court decisions in the Southern District of Ohio, Eastern Division, have held that Ohio law permits the exercise of general jurisdiction. In *Executone of Columbus, Inc. v. Inter-Tel, Inc.*, No. 2:06-cv-126, 2006 WL 3043115 at *7 (S.D.Ohio Oct. 4, 2006), the court based its conclusion that Ohio recognizes general jurisdiction on *LSI Industries, Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, (Fed. Cir. 2000). However, *LSI Industries* was in the Federal Circuit court, the Federal Circuit had before it a patent infringement action[1] and the Federal Circuit was analyzing due process and not analyzing jurisdiction under Ohio law. 232 F.3d at 1375. In the other case, *Pierson v. St. Bonaventure University*, No. 2:05 CV 0581, 2006 WL 181988 (S.D.Ohio Jan. 23, 2006), the court relied upon *Nationwide* and *Bird*, which are both discussed above and are not persuasive on this point.

The Plaintiffs also cite three cases not already discussed for the proposition that Ohio recognizes general jurisdiction. None of these cases are persuasive.

Two of the cases cited are from the Northern District of Ohio and both rely upon *Nationwide,* a case that is discussed above. *Microsys Computing, Inc. v. Dynamic Data Systems*, LLC, No. 4:05 CV 2205, 2006 WL 225821 at *4 (N.D.Ohio Aug 2, 2006); *Masko v. Family RV Center*, No. 4:05CV2593, 2006 WL 2077034 at * 2 (N.D.Ohio July 24, 2006). The third case is from the Southern District of Ohio, Western Division. *Bradford Co. v. Afco Manufacturing*, No.

---

[1]The law of the Federal Circuit and not the Sixth Circuit is applied to determine personal jurisdiction in a patent infringement action. *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998).

1:05-CV-449, 2006 WL 2225821 (S.D.Ohio Jan. 19, 2006). *Bradford* is a patent infringement case subject to Federal Circuit personal jurisdiction law and relies upon *LSI Industries* which is discussed above.

The Supreme Court of Ohio has not recognized general jurisdiction and has only applied Ohio's long-arm statute to determine personal jurisdiction. *Goldstein v. Christiansen*, 638 N.E. 2d 541 (Ohio 1994). Other courts, including the Sixth Circuit and this Court, considering Ohio diversity claims have only applied Ohio's long-arm statute to determine if personal jurisdiction exists. *See Calphalon*, 228 F.3d at 721; *Pittock v. Otis Elevator Co.,* 8 F.3d 325, 327 (6th Cir. 1993); *Vorhis v. American Medical Systems, Inc.*, No. 96-3525, 1997 WL 476527 at *1 (6th Cir. Aug. 19, 1997); *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 149 (6th Cir. 1997); *NCR Corp. v. PC Connection, Inc.*, 384 F.Supp.2d 1152, 1157 (S.D.Ohio 2005); *MacDonald v. Navistar International Transportation Corp.*, 143 F.Supp.2d 918, 923 (S.D.Ohio 2001); *Oasis Corp. v. Judd*, 132 F.Supp.2d 612, 617 (S.D.Ohio 2001); *Norcold, Inc. v. Greg Lund Products, Ltd*, 109 F.Supp.2d 819, 822 (S.D.Ohio 2000); *Smith v. Turfway Park*, No. C-3-97-145, 1999 WL 33117268 at *2 (S.D.Ohio Mar. 22, 1999); *Ahrendt v. Palmetto Federal Savings and Loan Association*, 680 F.Supp. 1125, 1127 (S.D.Ohio 1987).

Relying, as we must in this case, upon Ohio law as set forth by the Supreme Court of Ohio and, based upon the foregoing reasoning, general jurisdiction does not exist in Ohio. Jurisdictional analysis in Ohio is based only upon specific jurisdiction that may be available under Ohio's long-arm statute.

**b.**     **Specific Jurisdiction Under Ohio Law**

Specific jurisdiction in Ohio is provided by Ohio's long-arm statute, Ohio.Rev.Code §

2307.382. The portions of Ohio's long-arm statute relevant to this motion to dismiss are:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
>> (1) Transacting any business in this state;
>>
>> (2) Contracting to supply services or goods in this state;
>> …
>>
>> (4) Causing tortious injury in this state by an act or omission outside the state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>> …
>>
>> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;
>>
>> (7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty or complicity;
>
> (C) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

The Plaintiffs argue that specific personal jurisdiction in this matter exists under Sections (A)(1), (2), (4), (6) and (7) of Ohio's long-arm statute. Jurisdiction pursuant to Section (A)(1) will first be addressed.

Section (A)(1) provides for personal jurisdiction as to a cause of action arising from the defendant or the defendant's agent transacting any business in Ohio. The Supreme Court of Ohio has indicated that Section (A)(1) is "very broadly worded and permit[s] jurisdiction over nonresident defendants who are transacting any business in Ohio." *Genesis Insurance Co. v. Alfi*, 425 F.Supp.2d 876, 894 (S.D.Ohio 2006) (citing *Kentucky Oaks Mall Co. v. Mitchell's Formal*

-7-

*Wear*, 559 N.E.2d 477 (Ohio 1990), *cert. denied*, 499 U.S. 975 (1991)). Further, when analyzing section (A)(1), the court has no better guideline than the wording of Section (A)(1) and must rely upon a case-by-case determination. *Id.*

To determine if JKD was transacting business in Ohio, the analysis turns to the factual allegations. Where, as is the case here, a hearing is not conducted, conflicting factual allegations are viewed in a light most favorable to the Plaintiffs.

**B.      Jurisdictional Facts**

In this case, JKD is a New York limited liability company with its principal place of business in New York city. (Declaration of Moses Lenzky[2] ("Lenzky Decl.") ¶ 3 Dec. 21, 2006.) JKD has no members who are residents of Ohio. (Id.) JKD is not registered to do business in Ohio and has no agents or employees located in Ohio. (Id. ¶¶ 4, 5.) Finally, JKD does not maintain any office or other place of business in Ohio, has no telephone listing in Ohio, owns no property in Ohio and has never attended or displayed products at any trade shows in Ohio. (Id. ¶¶ 6, 8, 9.) There are, however, factual allegations that JKD transacted business with Stafford and others in Ohio.

Stafford first learned of Julius Klein Diamonds, which later came to be known as JKD, in April or May of 1998 when he received a call from Moshe Klein. (Affidavit of John M. Stafford ("Stafford Aff.") ¶ 4 Jan. 15, 2007.) The call from Moshe Klein was a response to a request that Stafford had posted on an internet site for jewelers for the purchase of a diamond. (Id.) Moshe Klein told Stafford that he had access to a vast selection of diamonds, that he was either the son of the owner or one of the owners of JKD, and that JKD was interested in doing business with

_____

[2]Moses Lenzky declares that he is the Office Manager for JKD.

Stafford and would be Stafford's account representative. (Id. ¶ 5.)

Following this initial call, Stafford had many other telephone calls with Moshe Klein and received a number of faxes from JKD.[3] (Id. ¶ 6.) The faxes were copies of GIA Certifications ("certs") of various stones that JKD was trying to sell to Stafford. (Id. ¶ 7.)

In June of 2000, Stafford purchased a diamond from JKD through Moshe Klein. (Id. ¶ 9.) At that time, Stafford was given a customer account number for his business with JKD. (Id.)

During the time Stafford was transacting business with JKD, he was also doing business with Zuri Mesica ("Mesica"), who was, at the time, the principal of Prestige Diamonds in California. (Id. ¶ 10.) In 2000 or shortly thereafter, Mesica told Stafford that it would be less expensive for Stafford to deal directly with Mesica because Prestige Diamonds purchased directly from JKD and Mesica could get a better price from JKD. (Id. ¶ 10.) Stafford then began dealing directly with Mesica. (Id.)

In the Spring of 2002, Mesica told Stafford that he and Prestige Diamonds were now part of JKD and that Mesica was a partner with JKD. (Id. ¶ 11.) After that, Stafford had little direct contact with Moshe Klein and continued to do business with Mesica. (Id. ¶¶ 11, 12.) The business consisted of purchases, receiving items on memo and receiving certs.[4] (Id. ¶ 12.)

Sometime in the Spring of 2002, the memos that Stafford received from Mesica changed from being from "Prestige Diamonds, Division of Regency Diamonds" to being from "Prestige

---

[3]Stafford provides copies of faxes received in 1998 and a memo and invoice from June of 2000 indicating that they are from "Julius Klein Diamonds, Inc." (Affidavit of John M. Stafford ("Stafford Aff. II") ¶ 2 Feb. 7, 2007.)

[4]A "cert" is an evaluation of the quality of a diamond by the Gemological Institute of America.

Diamonds, Division of JKD LLC." (Id. ¶ 14.) Mesica told Stafford that he spoke to Motty Klein, one of the owners of JKD, on a daily basis. Mesica also told Stafford that, as far as payment, Stafford's checks could be made out either to Mesica or to JKD and that funds could be wired to either California or New York since, according to Mesica, "it all goes to the same place anyway." (Id. ¶ 15.)

In June of 2000, Stafford purchased a diamond from JKD through Moshe Klein for approximately $4,000. (Id. ¶ 9.) From the Spring of 2002 through the end of 2003, Stafford made purchases totaling approximately $41,800 and received at least 14 separate memos which included diamonds and stones for possible purchase from "Prestige Diamonds Division of JKD LLC." (Id. ¶ 16.)

At some point in the Spring of 2004, Mesica's stationery began to read "JKD West LLC."[5] (Id. ¶ 18.) JKD advertised on the DTC web page that it had six "offices" and that JKD West was one of its offices and was one of its "associated companies." (Id. ¶ 25.) Stafford did not believe that there was any difference between JKD and JKD West and considered Mesica to be an agent for JKD. (Id. ¶¶ 13, 23.)

In May of 2004, Stafford and a client met with Steve Burger of JKD at JKD's offices in New York to view diamonds. (Id. ¶ 17.) The meeting was arranged by Mesica and included a brief meeting with Motty Klein. (Id.) As a result, a diamond was purchased and the funds were wired to JKD. (Id.)

---

[5]JKD argues that it and JKD West are separate legal entities, that JKD West is an "affiliate" or sister company of JKD and that JKD West is not controlled by JKD. (Moses Lenzky Declaration II ("Lenzky Decl. II") ¶ 4.) However, JKD also admits that JKD and JKD West have common ownership and are both part of the Julius Klein Group. (Id.)

On February 13, 2006, Stafford notified Mesica that he was going to send a pink diamond to JKD for either purchase or for certification. (Stafford Aff. ¶ 38.) The Pink Diamond was then allegedly sent, along with a necklace, from Stafford to JKD on that same day. (Compl. ¶ 18.)

The Pink Diamond was allegedly placed into a parcel paper and a "memo"[6] addressed to JKD was stapled to the parcel paper. (Id. ¶ 19.) The Pink Diamond was then placed into a legal size envelope and put into a clear plastic letter pouch supplied by United Parcel Service ("UPS"). (Id. ¶ 20.) The letter pouch was then placed in a standard UPS box which was sealed. (Id.) Brinks was then called and picked up the UPS box. (Id. ¶ 21.)

JKD alleges that the UPS box inside the Brinks shipping bag arrived at JKD's offices opened and empty. (Compl. ¶ 24; Stafford Aff. ¶ 41.) Brinks investigated the alleged loss and denied responsibility. (Stafford Aff. ¶ 42.) Brinks determined that the shipment was placed in a sealed container for transportation to New York and the container was still sealed with no evidence of tampering when it was accepted by JKD. (Id.)

The shipment of the Pink Diamond was insured for $1,500,000 through Brinks by Jewelers Mutual. (Id. ¶¶ 22, 33.) Jewelers Mutual denied coverage. (Id. ¶ 26.)

By its own admission, JKD conducts business with Stafford Jewelers and other Ohio businesses. In 2004, JKD made four shipments to Stafford Jewelers in Ohio, one for $405,000 and the other three for a total of $17,067. (Lenzky Decl. ¶ 10.) JKD's other shipments to Ohio customers in 2004 totaled approximately $1.4 million. (Id.) Together, JKD's shipments to all Ohio customers in 2004 totaled approximately $1.8 million which is less than 1% of JKD's total

---

[6]A "memo" is a memorandum typically used in the industry to describe what is in the package. (Comp. ¶ 19.)

revenues for 2004.

In 2005 and 2006, JKD made eleven shipments from New York to Stafford Jeweler's having a total value of $612,290. (Id.) JKD argues, however, that these shipments were made as an accommodation by JKD to JKD West, LLC ("JKD West"). (Id.) JKD West, according to JKD is not a division of JKD but is a separate legal entity that has common ownership with JKD. (Id.)

In addition to the shipments to Stafford Jewelers, JKD made sales totalling $2,916,703 to other Ohio customers in 2005 and 2006 (Id.) JKD's shipments to Ohio, including those to Stafford Jewelers, were less than 1.3% of JKD's total revenue in 2005 and less than 0.5% of JKD's total revenue in 2006. (Id.)

In addition to the sales to Ohio customers, JKD made two purchases from the Plaintiffs in 2005 totaling $203,000. (Id.) JKD made no purchases from Stafford Jewelers in 2004 or 2006 and made no purchases from other Ohio customers in 2004, 2005 or 2006. (Id.)

Finally, an internet website maintained by JKD allows registered users to view JKD's inventory but registered viewers may not make purchases from JKD's inventory directly from the website. (Id.) Stafford has both an authorization and password for JKD's website. (Stafford Aff. ¶ 13.) Although it is not possible to purchase directly from the website, Stafford contacted Mesica who placed orders with JKD for Stafford. (Id. ¶ 13.)

## C.    Analysis Under Ohio's Long-Arm Statute

The Plaintiffs have clearly made a prima facie showing that JKD regularly and deliberately transacted business in Ohio both as JKD and through JKD's agent, JKD West.[7]

_____

[7]The actions of JKD West as JKD's agent are attributable to JKD. *Genesis Insurance Co. v. Alfi*, 425 F.Supp.2d 876, 887 (S.D.Ohio 2006).

There is evidence for purposes of this motion to dismiss, that JKD both bought and sold jewelry to the Plaintiffs and sold jewelry to other Ohio customers in the six years prior to the disappearance of the Pink Diamond.

The Sixth Circuit has adopted the "Zippo sliding scale" approach to determine if the operation of a website constitutes purposeful availment. *The Cadle Company v. Schlichtmann*, 123 Fed.App'x 675, 678 (6th Cir. 2005). The "Zippo sliding scale" approach "distinguishes between interactive website, where the defendant establishes repeated online contacts with residents of the forum state, and websites that are passive, where the defendant merely posts information on the site." *Id.* "Interactive websites can subject the defendant to specific personal jurisdiction, whereas passive websites are less likely to confer such jurisdiction. *Id.* (citing *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889-91 (6th Cir. 2002)).

JKD's website is not interactive to the extent that potential customers can directly purchase jewels using the website. However, it is not completely passive either in that it offers to sell jewels, provides information regarding the jewels being sold and provides information on how to place orders. Thus, JKD's website falls somewhere on the "Zippo sliding scale" and, when combined with JKD's other contacts with Ohio, provides enough contacts to satisfy section (A)(6). The next issue then becomes whether Plaintiffs' causes of action arise from the transaction of business in Ohio by JKD as required by Ohio Rev. Code § 2307.382(C).

Where jurisdiction is based upon Ohio's long-arm statute, "only a cause of action arising from acts enumerated in [§ 2307.382 may be asserted against [a defendant]." *Burnshire*, 198 Fed.App'x at 430. Specifically, "the defendants actions in the state must be the proximate cause of the injury complained of … ." *Id.* Ohio law says proximate cause exists "where an act or

-13-

failure to act, in a natural and continuous sequence, directly produces the injury and without which it would not have occurred." O.J.I. § 19.10.

For example, personal jurisdiction does not exist where the circumstances which may have caused the injury are unrelated to the conduct of business in Ohio. *Brunner*, 441 F.3d at 466 (citing *Coleman v. Chen*, 712 F.Supp. 117, 117-19 (S.D.Ohio 1988) and *Cruz v. Kentucky Action Park, Inc.*, 950 F.Supp. 210, 212 (N.D.Ohio 1996)). However, a plaintiff may make service of process, and thus obtain personal jurisdiction, on a non resident who has caused an event to occur out of which the claim that is the subject of the complaint arose. *Joffe v. Cable Tech, Inc.*, 839 N.E.2d 67, 74 (Ohio Ct. App. 2005). In another example, personal jurisdiction exists in Ohio when the non resident defendant deliberately pursued the plaintiff's business in Ohio out of which the plaintiff's complaint arose. *Baird Brothers Sawmill, Inc. v. Augusta Construction*, No. 98-CA-152, 2000 WL 817068 at *5 (Ohio Ct. App. June 19, 2000).

In this case, Plaintiffs' claims against JKD arise from JKD's alleged conversion, negligent loss or theft in New York of the Pink Diamond which Plaintiffs allegedly shipped from Ohio to JKD's offices in New York City. The Pink Diamond was allegedly shipped to JKD for either purchase or for certification and return. (Stafford Aff. ¶ 39.)

Mesica had told Stafford on at least two occasions that JKD would be interested in the Pink Diamond. (Id. ¶¶ 36, 37.) Mesica also allegedly told Stafford that it made no difference whether the Pink Diamond was sent to JKD West or to JKD, but if it was sent to JKD, Stafford was to alert Mesica and he would alert JKD that it was coming. (Id. ¶ 37.) Mesica later told Stafford that Motty Klein was interested in seeing the Pink Diamond. (Id. ¶ 38.)

There is evidence, for purposes of this motion, that Stafford had an ongoing business

-14-

relationship with JKD, one in which JKD deliberately engaged. It is based upon this business relationship, that Stafford sent the Pink Diamond to JKD either for purchase or certification and return. It is out of this alleged event that Plaintiffs' claims arise. Therefore, as required by § 2307.382(C), Plaintiffs' causes of action arise from the transaction of business in Ohio by JKD and § 2307.382 (A)(1) of Ohio's long-arm statute is satisfied.

The Plaintiffs also argue that this Court has personal jurisdiction over JKD pursuant to §§(A)(2), (A)(4), (A)(6) and (A)(7) of Ohio's long-arm statute. However, since this Court has personal jurisdiction over JKD based upon § (A)(1), the remaining sections of Ohio's long-arm statute need not and are not addressed herein.

Having determined that this Court has personal jurisdiction under Ohio's long-arm statute, the second step of the analysis must be conducted. The second and final step of the analysis is a determination if personal jurisdiction under Ohio's long-arm statute comports with Federal Constitutional Due Process.

**D.     Due Process Analysis**

The Sixth Circuit has established a three part test for determining whether personal jurisdiction under Ohio's long-arm statute comports with the Due Process Clause. *Burnshire*, 198 Fed.App'x 430 (6th Cir. 2006) (citing *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). First, the defendant must purposely avail himself of the privilege of acting in Ohio or causing a consequence in Ohio. *Id.* Second, the cause of action must arise from the defendant's activities in Ohio. *Id.* Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with Ohio to make the exercise of jurisdiction over the defendant reasonable. *Id.*

1.      **"Purposeful Availment"**

The purposeful availment prong of the constitutional analysis is coextensive with the "transacting any business" standard of Ohio's long-arm statute. *Id.* at 432. Identical standards are used to interpret the "transacting any business" standard of Ohio's long-arm statute and the "purposeful availment" prong of the constitutional standard. *Id.* Therefore, since the "transacting any business" standard of Ohio's long-arm statute has been satisfied, as reasoned above, the "purposeful availment" prong of the Due Process analysis is also satisfied.

2.      **"Arising From"**

The "arising from" prong requires only that the cause of action have a substantial connection with the defendant's activities in Ohio. *Genesis*, 425 F.Supp.2d at 893. However, the Sixth Circuit has found that the requirement that contacts be the proximate cause of the asserted harm under Ohio's long-arm statute is more restrictive than the but for "arising from" standard applicable to the Due Process analysis. *Burnshire*, 198 Fed.App'x 430 n.2. Therefore, the Due Process analysis need not be applied to the "arising from" prong and it is satisfied if, as is the case here, the requirement that the contacts be the proximate cause of the asserted harm is satisfied under an analysis of Ohio's long-arm statute.

3.      **"Substantial Connection"**

The "substantial connection" prong requires that the acts of the defendant or the consequences caused by the Defendants must have a substantial enough connection with Ohio to make the exercise of jurisdiction over the Defendants reasonable. *Genesis*, 425 F.Supp.2d at 893 (citing *Southern Machine*, 401 F.2d at 384)). However, then the first two prongs of the Due Process analysis are satisfied, "an inference arises that the third, fairness, is also present; only the

-16-

unusual case will not meet this third criterion." *Id.* (citing *First National Bank of Louisville v. J. W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982)). Factors considered under the "substantial connection" or reasonableness prong "include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Finally, most of these considerations usually may be accommodated through means short of finding jurisdiction unconstitutional. Id.

JKD cites none of these factors that would render jurisdiction over them unconstitutional. Further, this is not one of the unusual cases where the inference of reasonableness is not satisfied. Therefore, the third prong of the Due Process analysis is satisfied.

## E.    Conclusion

This Court has personal jurisdiction over JKD pursuant to the "transacting any business" section of Ohio's long-arm statute. Further, exercising this personal jurisdiction comports with Due Process. Therefore, JKD's motion to dismiss for lack of personal jurisdiction must be OVERRULED.

The analysis next turns to JKD's motion to dismiss Count Six of Plaintiffs' Complaint. Count Six of Plaintiffs' Complaint is against JKD for fraud.

## II.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

JKD seeks to dismiss Count Six of Plaintiffs' Complaint for failure to state a claim upon which relief may be granted. Although not specifically indicated by JKD, this motion is made

pursuant to Fed.R.Civ.P. 12(b)(6).

## A. Relevant Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F. 2d 635, 638 (6th Cir. 1993)(citing *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987)). Put another way, "the purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." 5B Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1356 (3d ed. 2004).

The test for dismissal under Fed. R. Civ. P. 12(b)(6) is a stringent one. "[A] complaint should not be dismissed for failure to state a claim on which relief can be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."*Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 811 (1993)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In addition, for purposes of the motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff and its allegations taken as true. *Scheuer v. Rhodes,* 416 U.S. 232 (1974).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Columbia Natural Resources, Inc. v. Tatum*, 58 F. 3d 1101 (6th Cir. 1995), *cert. denied*, 516 U.S. 1158 (1996). The Court "need not accept as true legal conclusions or unwarranted factual inferences*." Morgan v. Church's Fried Chicken,* 829

-18-

F. 2d 10, 12 (6th Cir. 1987).  Put another way, bare assertions or legal conclusions are not sufficient.  *Lillard v. Shelby County Bd. of Educ.*, 76 F. 3d 716, 726 (6th Cir. 1996).  It is only well-pleaded facts which are construed liberally in favor of the party opposing the motion to dismiss.  *Id.*; see also Wright & Miller, *supra*, §1357.

Count Six of Plaintiffs' Complaint is a fraud claim brought pursuant to Ohio law. In reviewing an Ohio claim, this Court must apply the law of Ohio, as interpreted by the Supreme Court of Ohio. *Northland Ins. Co. v. Guardsman Prods. Inc.*, 141 F.3d 612, 617 (6th Cir. 1998). Specifically, this Court must apply the substantive law of Ohio "'in accordance with the then-controlling decision of the highest court of the state.'" *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Pedigo v. UNUM Life Ins. Co.*, 145 F.3d 804, 808 (6th Cir. 1998)).  Also, to the extent that the highest court in Ohio has not addressed the issue presented, this Court must anticipate how Ohio's highest court would rule. *Id.* (quoting *Bailey Farms. Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994)). The analysis next turns to JKD's motion to dismiss Plaintiffs' fraud claim.

**B.    Analysis**

The elements of an Ohio fraud claim are:

> (1) a representation or, where there is a duty to disclose, concealment of a fact,
> (2) which is material to the transaction at hand,
> (3) make falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
> (4) with the intent of misleading another into relying upon it,
> (5) justifiable reliance upon the representation or concealment, and
> (6) a resulting injury proximately caused by the reliance.

*Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 352 (6th Cir. 2000).

Plaintiffs' Complaint alleges that JKD made false representations to them concerning the

events surrounding the loss of the Pink Diamond, specifically through denials made by "Heim" on February 13, 2006, that JKD had nothing to do with the loss of the Pink Diamond. (Compl. ¶ 64.) The Complaint further alleges that JKD knew that these representations were false when they were made and that the false representations were made with the intent that the Plaintiffs would rely upon them. (Id. ¶¶ 65, 66.) Finally, the Complaint alleges that Plaintiffs relied upon the alleged false representations and that JKD's actions with regard to the alleged false representations have caused Plaintiffs to suffer actual damages believed to be in excess of $25,000. (Id. ¶¶ 67, 68.)

JKD argues that the Plaintiffs allege no facts demonstrating either reliance or resulting injury and that the Plaintiffs do not allege that they ever believed JDK's denials of wrongdoing. However, the Plaintiffs do allege that they relied upon JKD's alleged false representations and that they were injured as a result. For an example of reliance, the Plaintiffs contacted Brinks, the shipper, regarding the missing diamond and the Plaintiffs also made a claim to the insurer. (Id. ¶¶ 30, 35.) The alleged injury is the value of the missing Pink Diamond and the value of the ongoing efforts to determine what happened to the missing Pink Diamond.

JKD also argues that Plaintiffs have failed to allege any facts showing reliance on JKD's denials of wrongdoing after such wrongdoing had already occurred. This argument however, either presumes that the Pink Diamond was not received by JKD or that a misrepresentation could be made before the facts being misrepresented actually take place. The presumption that the Pink Diamond was not received by JKD remains to be shown and facts that are misrepresented must, by definition, have taken place, or not taken place, before they may be misrepresented.

-20-

The Plaintiffs have pled all of the elements of an Ohio fraud claim. Therefore, JKD's motion to dismiss Plaintiffs' Ohio fraud claim is OVERRULED. The analysis next turns to JKD's motion to strike certain paragraphs from the Complaint.

## III.    MOTION TO STRIKE

JKD seeks to have paragraphs 4 and 13 of Plaintiffs' Complaint stricken pursuant to Fed.R.Civ.P. 12(f). Rule 12(f) permits a court to strike "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter" from any pleading. *Ohio Democratic Party v. Blackwell*, No. 2:04-CV-1055, 2005 U.S. Dist. LEXIS 18126 at *10 (S.D.Ohio Aug. 26, 2005). A Rule 12(f) motion is appropriate where it will "eliminate spurious issues before trial and streamline the litigation." *Id.* at *11 (citation omitted). Allegations in a pleading are immaterial if they have no essential or important relationship to the claim and are impertinent if they do not pertain, and are not necessary to the issues in question. *Id.*

Motions to strike are generally disfavored but are within the "sound discretion" of the district court. *Id.* They should be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties. *Schultz v. Braga*, 290 F.Supp.2d 637, 655 (D.Md. 2003), *aff'd*, 455 F.3d 470 (4th Cir. 2006).

Paragraph 4 of Plaintiffs' Complaint alleges that JKD is one of only nine Diamond Trading Company ("DTC") sight holders in the United States. A DTC sight holder holds itself out as a diamantaire of the highest quality and retailers, such as the Plaintiffs, are dependent on their integrity. Yet, DTC sight holders have recently become embroiled in a scandal known as the "bribe-for-cert-upgrade" scandal. The scandal stems from activities of certain sight holders who have allegedly bribed the Gemological Institute of America (GIA") to certify higher-grade

diamonds inaccurately resulting in prices that do not reflect a diamonds actual worth.

Paragraph 13 alleges that, when Stafford heard of the GIA "bribe-for-cert-upgrade" scandal, he was concerned that JKD's reputation might be tarnished. He encouraged JKD to go on the offensive and he drafted a letter for JKD to publish in trade journals. The letter denied JKD's involvement in the scandal. Ultimately the letter was not published based upon advice to JKD from its attorneys.

All of the claims brought by the Plaintiffs relate to the alleged loss of the Pink Diamond. None involve the "bribe-for-cert-upgrade" scandal. There are no allegations that any certs received by the Plaintiffs from JKD were inaccurate and there are no allegations of any harm caused by an alleged involvement of JKD in the "bribe-for-cert-upgrade" scandal.

The Plaintiffs argue that the "bribe-for-cert-upgrade" scandal is part of the history of the business relationship between Plaintiffs and JKD and shows that Plaintiffs completely trusted JKD. However, the only way Stafford's trust in JKD could be implicated is in his willingness to ship the Pink Diamond to JKD. Yet, he knew about the scandal and JKD's decision to not publish the letter before he sent the Pink Diamond to JKD.

The Plaintiffs also argue that Stafford Jewelers was concerned since two of its largest clients had purchased from JKD. However, the Complaint does not make any claims regarding these purchases.

Finally, the Plaintiffs argue that the Complaint and Stafford's Affidavit address with sufficiently particularity the allegation of fraud. However, Count Six of the Complaint is for fraud and makes no mention of the "bribe-for-cert-upgrade" scandal nor is any harmed alleged as a result of the scandal.

The Plaintiffs have not shown a relationship between their claims of wrongdoing and the alleged scandal. Further, allegations of JKD's involvement in the scandal are highly prejudicial to JKD. Therefore, paragraphs 4 and 13 of Plaintiffs' Complaint are struck.

## IV.     SUMMARY

JKD's motion to dismiss is OVERRULED. This Court has personal jurisdiction over JKD pursuant to Ohio's long-arm statute, Ohio Rev. Code § 2307.382(A)(1). Further, exercising this personal jurisdiction comports with the Due Process Clause of the United States Constitution. Also, the Plaintiffs have sufficiently pled allegations of fraud.

JKD's Motion To Strike is GRANTED. Paragraphs 4 and 13 of Plaintiffs' Complaint are struck because they are immaterial and impertinent to the alleged wrongdoing and they are highly prejudicial to JKD.

**DONE** and **ORDERED** in Dayton, Ohio, this Twenty-Ninth day of March, 2007.

**s/Thomas M. Rose**

_____

THOMAS M. ROSE
UNITED STATED DISTRICT JUDGE

Copies furnished to:

Counsel of Record