UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

U.S. DIAMOND & GOLD D/B/A
STAFFORD'S JEWELERS, et al.,

        Case No. C-3-06-371

   Plaintiffs,

        Judge Thomas M. Rose

-v-

THE JULIUS KLEIN DIAMONDS LLC, et al.,

   Defendants.

---

**ENTRY AND ORDER GRANTING JEWELERS MUTUAL'S CROSS MOTION FOR SUMMARY JUDGMENT (Doc. #65) AND OVERRULING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (Doc. #44)**

---

     This complaint arises from the alleged disappearance of a 5.56 carat, fancy intense pink diamond (the "Pink Diamond"). Plaintiffs allege that the Pink Diamond was initially owned by Plaintiff John Stafford ("Stafford") and then sold to Plaintiff U.S. Diamond & Gold d/b/a Stafford's Jewelers ("Stafford's Jewelers") (referred to herein collectively as the "Plaintiffs"). The Pink Diamond was valued by Stafford to be in excess of $1.5 million.

     As a result of the Pink Diamond's disappearance, Plaintiffs have brought a nine-count complaint. Counts One through Seven are against Defendant Julius Klein Diamonds LLC ("JKD"). Count Eight is against Defendant Jewelers Mutual Insurance Company ("Jewelers Mutual") for a declaratory judgment that Jewelers Mutual is obligated to provide insurance coverage for the loss of the Pink Diamond. Count Nine is against Jewelers Mutual for breach of a contract of insurance.

     Now before the Court are Plaintiffs' Motion for Summary Judgment against Jewelers Mutual (doc. #44) and Jewelers Mutual's Cross Motion for Summary Judgment against the

Plaintiffs (doc. #65). Both of these Motions are now fully briefed and ripe for decision. A relevant factual background will first be set forth followed by the standard of review for motions for summary judgment and an analysis of the Motions.

## RELEVANT FACTUAL BACKGROUND

<u>Acquisition of The Pink Diamond</u>

Stafford allegedly purchased the Pink Diamond on June 3, 2005. (Examination Under Oath of John M. Stafford ("Stafford Exam.") 65 June 8, 2006; Deposition of John M. Stafford ("Stafford Dep.") 71 Nov. 26, 2007.) He purchased the Pink Diamond for $8,000 cash in Las Vegas from an individual whose name he remembers as Carl Vaughner ("Vaughner"). (Stafford Exam. 46-50.)

Vaughner had called Stafford several times before their meeting in Las Vegas but Stafford had never seen Vaughner before he made the purchase. (Id. 41-43.) Further, Stafford has not seen nor talked to Vaughner since the purchase of the Pink Diamond. (Stafford Exam. 49-51; Stafford Dep. 75, 97.)

Vaughner allegedly told Stafford that the Pink Diamond was given to his mother by his father but his mother considered the diamond to be bad luck and would not wear it. (Stafford Exam. 45; Stafford Dep. 90.) Stafford does not suspect that the Pink Diamond was stolen but he does think, based upon the way it was cut, that the Pink Diamond may have actually been booty from World War II. (Stafford Exam. 58-59; Stafford Dep. 103.)

Stafford was prepared to write a receipt to Vaughner for the Pink Diamond. (Stafford Exam. 48.) When Stafford asked Vaughner for a driver's license so that he could write the receipt, Vaughner said he needed to go to his car to get it. (Stafford Exam. 48; Stafford Dep. 97.)

Vaughner then left and never returned. (Id.)

When he made the purchase, Stafford was in Las Vegas for a jewelry convention. (Id. 84.) Stafford purchased the Pink Diamond with personal funds that he had taken to Las Vegas for gambling purposes. (Stafford Exam. 60; Stafford Dep. 92.)

When Stafford returned to Ohio on or about June 7, 2005, he placed the Pink Diamond in his personal safe located at Stafford's Jewelers. (Stafford Dep. 143.) He did not tell anyone, including his wife, that he was putting the Pink Diamond in his personal safe. (Id. 143.)

Stafford's wife Donna was the President of Stafford Jewelers and did the financials at the time. (Stafford Dep. 14.) Donna was also responsible for keeping track of inventory by assigning stock numbers to each item of jewelry acquired by Stafford's Jewelers. (Stafford Exam. 14-16.)

Stafford did not tell Donna about the Pink Diamond because they were having marital problems at the time. (Stafford Dep. 144.) Donna first found out about the Pink Diamond when she opened one of the letters from Brinks regarding their investigation of the disappearance of the Pink Diamond. (Id. 145.)

The Disappearance of the Pink Diamond

In January of 2006, Stafford decided to sell the Pink Diamond. (Stafford Dep. 169.) After several telephone conversations with Zuri Mesica of JKD, Stafford decided to send it to JKD for JKD to buy. (Id. 167-70.) He packaged the Pink Diamond for shipping in his office on January 13, 2006, accompanied only by his grandchildren aged four and six. (Stafford Exam. 100-01; Stafford Dep. 175-76.)

Stafford placed the Pink Diamond into parcel paper and stapled a memorandum to the parcel paper. (Affidavit of John M. Stafford ("Stafford Aff.") ¶ 12 Jan. 3, 2008.) The

memorandum was from Stafford's Jewelers to "Saul" at JKD. (Stafford Dep. 176-77; Jewelers Mutual Response Ex. E.) Stafford says that this memorandum to "Saul" evidences his sale of the Pink Diamond to Stafford's Jewelers. (Stafford Dep. 163.)

Stafford then placed the Pink Diamond into a legal size envelope and put the envelope into a clear plastic letter pouch supplied by United Parcel Service ("UPS"). (Stafford Aff. ¶ 12.) The letter pouch was then attached to the inside of a UPS box which was filled with large plastic bubble packing and sealed with clear plastic packing tape. (Id.) The UPS box was then placed inside of a Brink's shipping bag and sealed with a Brink's numbered seal tag. (Id.)

At about 3:00 p.m. on January 13, 2006, Brink's arrived at Stafford's Jewelers to pick up the package containing the Pink Diamond. Brink's also picked up a package containing a fifty-two carat diamond necklace that Stafford was sending to JKD for repair. (Id. ¶¶ 11, 13.) This necklace was valued in excess of $400,000. (Id. ¶ 11.) Stafford insured the Pink Diamond with Brink's for $1.5 million and the necklace for $450,000. (Stafford Exam. 95-96.)

On January 14, 2006, Zuri Mesica called Stafford and told him that the Pink Diamond package had arrived at JKD in New York but the package was empty. (Stafford Aff. ¶ 14.) The package containing the necklace arrived and contained the necklace. (Stafford Dep. 209.) Brink's denies responsibility for the loss of the Pink Diamond and indicates that their shipping container was sealed with no evidence of tampering when it arrived at JKD in New York. (Id. ¶¶ 15, 16, Ex. 4.) The Pink Diamond has disappeared.

<u>Stafford's Jewelers' Recordkeeping</u>

Stafford had previously purchased gemstones with his personal funds and then later sold them to Stafford's Jewelers. (Stafford Exam. 60.) He would typically write a note to Stafford's

-4-

Jewelers and Stafford's Jewelers would then pay him for the gemstone. (Id. 60-61.) Once a gemstone was sold or certified, Stafford's Jewelers would then issue a stock number for the gemstone. (Id. 61.) After the gemstone was sold, Stafford would be paid by Stafford's Jewelers. (Id.) He would then reinvest the proceeds back into Stafford's Jewelers. (Id.)

In this case, no written documentation was ever issued by Stafford or by Stafford's Jewelers to memorialize the purchase of the Pink Diamond from Vaughner. (Stafford Exam. 21, 160-62; Stafford Dep. 163.) Also, there is no written documentation, other than the memorandum from Stafford's Jewelers to JKD, that ownership of the Pink Diamond was transferred from Stafford to Stafford's Jewelers. (Stafford Exam. 21; Stafford Dep. 163; Affidavit of James M. Moore ("Moore Aff.") ¶¶ 5-6 Dec. 26, 2007.)

Further, Stafford has not written a note for the Pink Diamond or been paid by Stafford's Jewelers for the Pink Diamond but he considers it sold to Stafford's Jewelers on the day it was shipped to JKD. (Stafford Exam. 61-62; Stafford Dep. 270.) The only paperwork that Stafford identifies regarding transfer of the ownership of the Pink Diamond from him to Stafford's Jewelers is the memorandum to JKD that he prepared when he shipped the Pink Diamond to JKD on January 13, 2006. (Stafford Exam. 62; Stafford Dep. 163.)

The Pink Diamond was never included in Stafford's Jewelers' inventory. (Stafford Exam. 162-63; Stafford Dep. 269-70.) The only evidence that Stafford has that he ever had the Pink Diamond is his testimony and the fact that he sent a package to JKD insured for $1.5 million. (Stafford Exam. 72.)

The Insurance Policy

Stafford's Jewelers purchased Comprehensive Jewelers Block Policy Number 91223 from Jewelers Mutual (the "Policy"). (Stafford Aff. ¶ 2; Compl. Ex. A.) The Policy covered the period from September 15, 2005, through September 15, 2006. (Compl. Ex. A.) Stafford's Jewelers is the named insured. (Id.)

Under the terms of the Policy, Stafford's Jewelers was insured for the base amount of $2.1 million on property in stock. (Id.) Insurance in the amount of $50,000 was provided for in-transit losses incurred while in U.S. Postal Service First-Class Registered Mail and $200,000 for in-transit losses while in the hands of an armored car service. (Id.) Finally, insurance in the amount of $75,000 was provided for losses while in the custody of other jewelry dealers. (Id.)

The Policy, under the heading "Other Coverage Conditions," includes the following relevant insuring condition:

> 12. Records - "you" must keep the following records:
>
> a.    A detailed and itemized inventory of "your" property covered, which includes the quantity, description and value of the inventory at cost or as valued for reporting under the application attached to this policy. This must be updated by taking a physical inventory at least once a year.
>
> b.    Purchase invoices, sales receipts and related documents; and
>
> c.    A detailed listing of property:
>
>     1) Belonging to others not in the jewelry business;
>
>     2) Belonging to others in the jewelry business;
>
>     3) Away from the "described premises," in "your" custody or the custody of a principal, officer, employee or commissioned salesperson, and
>
>     4) You send to others.
>
> "You" must keep and produce these records for "us" in a manner that will allow "us" to accurately determine and verify the existence of the property covered and

the amount of the loss.

(Id.)

On May 15, 2006, Stafford's Jewelers submitted a sworn statement in proof of loss of the Pink Diamond to Jewelers Mutual. (Stafford Aff. ¶ 6, Ex. 5.) Stafford's Jewelers claimed a loss in the amount of $75,000, and claimed that the loss occurred at JKD. (Id.)

After receiving the sworn statement in proof of loss, Jewelers Mutual conducted an examination under oath of Stafford. Stafford also provided additional documents as requested by Jewelers Mutual. On June 29, 2006, Jewelers Mutual denied coverage of Stafford's Jewelers' claim on the Pink Diamond. (Stafford Aff. Ex. 6.) The claims against Jewelers Mutual that are now before the Court were then made by the Plaintiffs.

## STANDARD OF REVIEW

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and the associated caselaw. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

However, the mere existence of a scintilla of evidence in support of the nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be

-8-

evidence on which the jury could reasonably find for the plaintiff." *Id.* The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not …obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

In addition to applying the federal procedural standard for motions for summary judgment, as a federal court located in Ohio exercising diversity jurisdiction, this Court must apply Ohio substantive law unless the law of another state is specifically implicated, which it is not in this case. *Hisrich v. Volvo Cars of N. America, Inc.*, 226 F.3d 445, 449 (6th Cir. 2000). This Court must apply the substantive law of Ohio "'in accordance with the then-controlling decision of the highest court of the state."' *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Pedigo v. UNUM Life Ins. Co.*, 145 F.3d 804, 808 (6th Cir. 1998)).

To the extent that the highest court in Ohio has not addressed the issue presented, this Court must ascertain from all available data, including the decisional law of Ohio's lower courts, what Ohio's highest court would decide if faced with the issue. *Id.; Bailey v. V & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir. 1985). Finally, where Ohio's highest court has not addressed

the issue presented, a federal court may not disregard a decision of an Ohio appellate court on point unless the federal court is convinced by other persuasive data that the highest court of Ohio would decide otherwise. *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir. 1989).

## ANALYSIS

Plaintiffs argue that Jewelers Mutual is obligated to pay Stafford's Jewelers $75,000 and attorneys' fees and costs for the loss of the Pink Diamond and for breaching the Policy by failing to provide coverage. Stafford's Jewelers claims that the Pink Diamond was lost while in the custody of jewelry dealers other than Stafford's Jewelers. Jewelers Mutual argues that Plaintiffs' Complaint should be dismissed on the basis that Stafford's Jewelers failed to comply with the conditions and requirements of the Policy regarding records.

### Relevant Law

In Ohio, the interpretation of an insurance contract is first a question of law. *Gomolka v. State Automobile Mutual Insurance Co.*, 436 N.E.2d 1347, 1348 (Ohio 1982). Further, Ohio contract rules are applied to the interpretation of insurance contracts such as the Policy at issue here. *Weiss v. St. Paul Fire and Marine Insurance Co.*, 283 F.3d 790, 796 (6th Cir. 2002)(citing *King v. Nationwide Insurance Co.*, 519 N.E.2d 1380, 1383 (Ohio 1988)), *cert. denied*, 537 U.S. 883 (2002). When interpreting insurance contracts, the court first determines if the contract terms at issue are ambiguous. *Id.* (citing *United National Insurance Co. v. SST Fitness Corp.*, 182 F.3d 447, 449 (6th Cir. 1999)).

A term is ambiguous if it is reasonably susceptible of more than one meaning. *Id.* If a term is ambiguous, it is to be "construed strictly against the insurer and liberally in favor of the

insured." *Westfield Companies v. O.K.L. Can Line*, 804 N.E.2d 45, 49 (Ohio Ct. App. 2003).

If the terms of the insurance contract are not ambiguous, the court determines the meaning of the insurance contract as a matter of law. *Weiss*, 283 F.3d at 796 (citing *Nationwide Mutual Fire Insurance Co. v. Guman Brothers Farm*, 652 N.E.2d 684, 686 (Ohio 1995)). When determining the meaning of the insurance contract, the court is to give the terms of the contract their plain and natural meaning "unless absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Alexander v. Buckeye Pipeline Co.*, 374 N.E.2d 146, 150 (Ohio 1978). Courts may not enlarge the contract by implication to address an issue not contemplated by the parties, may not read into a contract a meaning not put there by the parties and may not make a new contract where the parties' unequivocal acts demonstrate an intention to the contrary. *Gomolka*, 436 N.E.2d at 1348.

If no ambiguity exists, the terms of the insurance policy must be applied without resorting to methods of construction and interpretation. *Alexander*. 374 N.E.2d at 246-47. When the insurance contract fails to expressly state a disputed and important provision and there is no other provision in the insurance contract whose only possible interpretation supports only one party's position as to the disputed and important provision, summary judgment is inappropriate. *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 474 N.E.2d 271, 273 (Ohio 1984).

In this case, the parties dispute the meaning of the Policy's "records" clause. Ohio courts have upheld the validity of record keeping conditions in fire/theft casualty insurance policies. *See, e.g., Mandlethord v. Union Indemnity Co.*, 167 N.E. 480 (Ohio Ct. App. 1928.) *Mandelthord* involved the rights of an insurer to enforce policy conditions requiring an insured

to maintain proper books and records in order to recover for a claimed loss. The *Mandelthord* court did not think it was unreasonable for the policy at issue, which covered property of a "shifting nature," to require an accurate system of bookkeeping to determine the amount of stock on hand each day and the amount constantly being sold. *Id.* at 481. "Any other rule would open wide the doors for the perpetration of frauds and the grossest impositions upon insurers." *Id.* The *Mandelthord* court further found that "[n]o particular method of bookkeeping is required, but the books must themselves furnish the [inventory] information with reasonable certainty, unaided by oral testimony…." *Id.* In another case, the court declined to enforce a similar recordkeeping clause, where the insured negligently lost the inventory but provided the original copy of a physical inventory and copies of purchases and passbooks showing sales since the physical inventory. *Old Colony Insurance Co. v. A. Schultz & Co.*, 29 Ohio C.D. 383 at *6 (Ohio Ct. App. 1917)( if the insured is able to produce substantially the same proof that would have been available to the insurer had the books been preserved, the insurance company ought not to stand upon the technical performance of the recordkeeping condition).

Finally, Ohio generally requires that an award of attorneys' fees and costs be based upon an express authorization of the Ohio General Assembly or upon a finding that the losing party has acted "in bad faith, vexatiously, wantonly, obdurately, or for oppressive reasons." *Westfield*, 804 N.E.2d at 53-54. For example, attorneys' fees and costs have been awarded in insurance cases where the insurers conduct has led to the legal fees being incurred. *Id.* at 54.

The Meaning of the "Records" Clause

In this case, neither party argues that the "records" clause that is at issue here is ambiguous. (Plts.' Mot. Summ. J. 6, 7; Defs.' Response 11.) Nor does the Court find this clause

to be ambiguous. Therefore, the Court may determine the meaning of the "records" clause as a matter of law.

The Policy's "records" clause requires the insured to keep a "detailed and itemized inventory" of the property that is to be covered by the Policy. The "detailed and itemized inventory" must include the quantity, description and value of the property that is to be covered by the Policy. The "detailed and itemized inventory" is to be updated by taking a physical inventory at least once per year.

In addition to the "detailed and itemized inventory," the "records" clause requires that the insured keep "purchase invoices, sales receipts and related documents" for the property that is to be covered by the Policy. The "records" clause also requires the insured to keep a detailed listing of property belonging to others not in the jewelry business; property belonging to others in the jewelry business; and property away from the "described premises" that is in the insured's custody or the custody of a principal, officer, employee or commissioned salesperson. The insured must also keep a detailed listing of property sent to others. The purpose of keeping the aforementioned records is so the insurer is able to accurately determine and verify the existence of the property covered by the Policy and the amount of any claimed loss.

<u>Application of the "Records" Clause</u>

The terms of the Policy clearly and unambiguously require that certain records be kept. In this case, Stafford's Jewelers has not satisfied these recordkeeping requirements with regard to the Pink Diamond.

Assuming that the Pink Diamond belonged to Stafford and not Stafford's Jewelers while it was in Stafford's personal safe, if Stafford's Jewelers wished to insure the Pink Diamond,

Stafford's Jewelers was required to keep a detailed listing that included the Pink Diamond because it was property belonging to others in the jewelry business. This it did not do.

If the Pink Diamond belonged to Stafford's Jewelers while it was in Stafford's personal safe, it should have been included in a "detailed and itemized inventory" maintained by Stafford's Jewelers, the insured. This, also, was not done.

Assuming that Stafford sold the Pink Diamond to Stafford's Jewelers on February 13, 2006, as he said he did, the Pink Diamond should have been added to Stafford's Jewelers' "detailed and itemized inventory" at that time. The Plaintiffs argue that the Pink Diamond was added to Stafford's Jewelers the moment it was allegedly purchased by Stafford's Jewelers. However, no record was made of this transfer as is required by the Policy. The Pink Diamond was not added to Stafford's Jewelers' "detailed and itemized inventory." In fact, the evidence indicates that Stafford never intended to include the Pink Diamond in Stafford's Jewelers' "detailed and itemized inventory."

Stafford's Jewelers should also have had a purchase invoice for the Pink Diamond as required by the "records" clause. The memorandum from Stafford's Jewelers to JKD is not a purchase invoice. It is addressed to Saul at JKD and gives directions to Saul as to Stafford's Jewelers wishes with regard to the Pink Diamond. The memorandum does not indicate that Stafford's Jewelers is buying or offering to buy the Pink Diamond from Stafford and it includes no purchase price. The memorandum also does not include the contingent payment terms that Stafford claims were attendant to Stafford's Jewelers' purchase of a gemstone from Stafford.

The Plaintiffs argue that, if the Pink Diamond had not been lost the day after its alleged purchase by Stafford's Jewelers, additional paperwork regarding the purchase and shipment of

-14-

the Pink Diamond would have been completed. However, it was not. There is no purchase invoice for the Pink Diamond nor was it added to Stafford's Jewelers' "detailed and itemized inventory" as required by the Policy.

If Stafford did not sell the Pink Diamond to Stafford's Jewelers on February 13, 2006, Stafford's Jewelers should have included it in a detailed listing of property belonging to others in the jewelry business. This, also, was not accomplished.

The Plaintiffs argue that the Pink Diamond was in the custody of JKD at the time of the loss. However, the "records" clause requires Stafford's Jewelers to keep a detailed listing of property sent to others. While the shipping list provided by Stafford is a record of items shipped, it is not a record that the Pink Diamond was Stafford's Jewelers' property at the time it was shipped or that the Pink Diamond was added to Stafford's Jewelers' "detailed and itemized inventory."

As is evidenced by Stafford's testimony, none of the required records exist. Therefore, Stafford's Jewelers has not satisfied the Policy's "records" clause.

The Plaintiffs cite *Old Colony* for the proposition that other courts have refused to rigidly enforce recordkeeping clauses in insurance policies and this Court should do the same. However, in *Old Colony*, the insured was able to produce all of the required records, or records that could be used to create the required records, in some other form. Therefore, the insurer had records from which it could determine the loss. The court refused to technically enforce the specific terms of the insurance policy but did enforce the intent of those specific terms, that being the ability to make a determination of the amount of the claimed loss from books and records. Other courts have refused to accept only oral testimony regarding a loss and have enforced

recordkeeping clauses in insurance contracts. *See, e.g., Mandelthord*, 167 N.E.2d 480. In this case, there are no written inventory records or purchase orders from which Jewelers Mutual can determine if there was a loss and the amount thereof.

The Plaintiffs also argue that the Policy's "records" clause has not been breached because it only requires Stafford's Jewelers to take a physical inventory once per year. This is what the "records" clause says and means. However, the "records" clause also requires Stafford's Jewelers to keep a "detailed and itemized inventory" of property that it wishes to have covered by the Policy. The once-a-year physical inventory is to be used to update the "detailed and itemized inventory." While Stafford's Jewelers may not have been required to conduct a physical inventory at the time of the loss, it was required to otherwise keep a "detailed and itemized inventory."

## CONCLUSION

There are no genuine issues of material fact and Jewelers Mutual is entitled to judgment as a matter of law. Stafford's Jewelers did not comply with the enforceable "records" requirement in the Policy with regard to the Pink Diamond and is, therefore, not entitled to insurance coverage on the Pink Diamond. Jewelers Mutual's Cross Motion for Summary Judgment (doc. #65) is GRANTED. Plaintiffs' Motion for Summary Judgment (doc. #44) is OVERRULED.  Counts Eight and Nine of Plaintiffs' Complaint against Jewelers Mutual are DISMISSED.

**DONE** and **ORDERED** in Dayton, Ohio, this Twenty-Eighth day of January, 2008.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATED DISTRICT JUDGE

Copies furnished to:

Counsel of Record