# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

**U.S. DIAMOND & GOLD D/B/A STAFFORD'S JEWELERS, et al.,**

       **Plaintiffs,**

-v-

**THE JULIUS KLEIN DIAMONDS LLC, et al.,**

       **Defendants.**

**Case No. C-3-06-371**

**Judge Thomas M. Rose**

---

**ENTRY AND ORDER OVERRULING JKD'S MOTION FOR A SHOW CAUSE ORDER, SANCTIONS AND AN ORDER IN LIMINE REGARDING THIS COURT'S MARCH 29, 2007 AND JANUARY 7, 2008 ORDERS (Doc. #108); GRANTING JKD'S MOTION FOR A SHOW CAUSE ORDER REGARDING THIS COURT'S DECEMBER 29, 2007 ORDER (Doc. #113); ORDERING PLAINTIFFS TO SHOW CAUSE AS TO WHY THEY SHOULD NOT BE HELD IN CONTEMPT OF THIS COURT'S DISCOVERY ORDER REQUIRING THEM TO PROVIDE FINANCIAL STATEMENTS FOR THE YEARS 2006 AND 2007 AT A HEARING TO BE CONDUCTED FOR THIS PURPOSE AT 9:30 A.M. ON AUGUST 21, 2008, IN COURTROOM NUMBER 2, FEDERAL BUILDING, DAYTON, OHIO; OVERRULING PLAINTIFFS' MOTION TO STRIKE PORTIONS OF THE AFFIDAVITS OF MOSES LENZKY AND ZURI MESICA (Doc. #109); AND OVERRULING PLAINTIFFS' MOTION TO REOPEN DISCOVERY (Doc. #111)**

---

The Motions for Summary Judgment in this matter have been addressed by the Court. (Doc. #112.) A jury trial is set to begin on September 15, 2008. There are now four motions pending and ripe for decision. Each will be addressed seriatim.

## JKD'S MOTION FOR SHOW CAUSE ORDER REGARDING COURT'S MARCH 29, 2007 AND JANUARY 7, 2008 ORDERS

First before the Court is the motion for a show cause order, sanctions and an order in limine filed by Defendant Julius Klein Diamonds LLC ("JKD"). (Doc. #108.) This motion was

filed on May 15, 2008. It is now fully briefed and ripe for decision.

JKD moves the Court for an order that Plaintiffs U.S. Diamond & Gold and John Stafford (collectively the "Plaintiffs") show cause as to why they should not be held in contempt of this Court's Orders dated March 29, 2007, and January 7, 2008, and for sanctions. JKD also seeks an Order in limine barring any attempt by Plaintiffs from introducing any argument, evidence, or testimony and precluding any inquiry, mention or indication, relating to the "bribe-for-cert upgrade" scandal or JKD's relationship with the Gemological Institute of America ("GIA") or communications between JKD and the GIA in any way. Finally, JKD seeks an award of reasonable attorneys' fees and costs incurred as a result of Plaintiffs' wilful disobedience of this Court's Orders.

The relevant facts will first be set forth. This is followed by a summary of the relevant legal provisions and an analysis of JKD's motion.

### Relevant Facts

On March 29, 2007, this Court entered an Order entitled "Entry and Order Overruling JKD's Motion To Dismiss and Granting JKD's Motion To Strike. (Doc. # 25.) The March 29, 2007 Order struck Paragraphs 4 and 13 of Plaintiffs' Complaint because these two paragraphs were "immaterial and impertinent to the alleged wrongdoing" and were "highly prejudicial to JKD."

On January 7, 2008, this Court issued a "Decision and Order Denying Plaintiffs' Motion To Compel." (Doc. #76.) In their two branch Motion To Compel, Plaintiffs first sought to compel JKD to respond further to Plaintiffs' June 2007 interrogatories and document requests. The second branch sought to compel an initial response to Plaintiffs' November 20, 2007, Third

Set of Interrogatories and Third Request for Production. The first branch was overruled as

untimely. The second branch was denied because the time for a response to the discovery

requests was beyond the discovery deadline.

The Settlement Demand Letter

On April 26, 2008, Plaintiffs sent counsel for JKD a written settlement demand. Relevant

to the issue that is now before the Court, the settlement demand included the following

paragraphs:

> As to the specific issue of "Certifigate" and the GIA scandal, we believe
> the evidence will show that JKD's account with the GIA Lab was closed by GIA
> at the time that John Stafford discussed with Zuri Mesica sending the Pink
> Diamond to JKD for grading and certification. Thus, the representation of Zuri
> Mesica, agent of JKD, and part-time unlicensed securities dealer, that Stafford
> and Stafford Jewelers should send the Pink Diamond to them for certification and
> possibly purchase was false and was known by JDK to be false. This
> representation of JKD was simply a way to get Stafford Jewelers and Stafford to
> send the Pink Diamond to JKD so they could steal it, tell Stafford to sue Brinks
> and then when Stafford finds out the truth from Brinks, JKD claims that Stafford
> stole it himself. Although the "scandalous and impertinent" details of the largest
> scandal to hit the diamond industry may have been stricken, we will not need the
> testimony from any "certified briber" who moved to Scandavia for purposes of
> this trial. The Certifigate scandal concerns a wide range of fraud, corruption,
> bribery, counterfeit and forgery that may not come into this case but the
> statements of Zuri Mesica to John Stafford both before and after the filing of this
> lawsuit will be admitted or at a minimum proffered. Any representative of JKD,
> whether Moses Lenzky, Zuri Mesica or Moshe Klein, will be asked in Court
> whether JKD had an account with GIA in February 2006. We now know that JKD
> did not have any such account and many will be in attendance including
> investigative journalists to hear the truth. JKD's artful dodging in initial Court
> filings of Certifigate issues will not be permitted and once the lack of a JKD
> account in February 2006 with GIA is disclosed publicly, any harm to JKD for
> non adherence to the DBBP will far exceed any settlement demand in this letter.
> We are authorized at this time to submit a settlement demand of $15
> million. The value of the Pink Diamond has appreciated greatly in today's market,
> and there have been expenses associated with this litigation. Given the allegations
> and legal theories in this case, any finding of compensatory damages will include
> punitive damages. As part of the settlement, our clients would agree to a
> confidentiality provision which would preclude any cooperation with any

-3-

journalist and Plaintiffs and JKD would issue a joint public statement. Our clients would also require a letter of apology from Julius Klein Diamonds to John M. Stafford and Stafford Jewelers signed by Martin Klein, A.D. Klein and Zuri Mesica.

The State Court Case[1]

Next, on April 30 and May 1, 2008, Plaintiffs, who are defendants and counterclaim plaintiffs in the State Court Case, obtained letters rogatory for documents and deposition testimony for Zuri Mesica ("Mesica") who is an agent for JKD and General Manager of JKD West and for the GIA. Mesica was listed as a witness by the plaintiff in the State Court Case and was to testify about a number of things in the State Court Case including the reputation of John Stafford and communications concerning the Pink Diamond and JKD.

On May 22, 2008, JKD, JKD West and Mesica filed a Motion for Protective Order or, Alternatively, for Intervention in the State Court Case. This motion was subsequently overruled and the depositions of Mesica and the GIA were ordered to go forward.

The Mesica deposition began but was suspended by JKD and Mesica after Mesica was questioned about his employer JKD's relationship with the GIA. JKD and Mesica took the position that the motion that they had filed with the Second District Court of Appeals regarding the Mesica deposition had not been ruled on. This motion for an emergency injunction was overruled by the Second District on May 23, 2008.

---

[1]Currently pending in the Montgomery County Court of Common Pleas is an action captioned *Stafford Jewelers, Inc. v. John M. Stafford d/b/a Stafford Jewelers of Dayton, et al.*, Case No. 05-7059 (the "State Court Case"). In this action, John Stafford is being sued by his brother, Jim Stafford, for trade name infringement with regard to the name "Stafford Jewelers." The claims and counterclaims in this state court action include unfair competition, trademark infringement, deceptive trade practices and trademark dilution. JKD and GIA are not parties to the State Court Case.

-4-

The GIA deposition on May 27, 2008, did not result in any substantive testimony before it too was suspended. On that same day, the State Court overruled the GIA's Motion To Quash. When the GIA continued to resist its deposition, it was ordered to appear on May 29, 2008, for a hearing to show cause as to why it should not be held in contempt.

JKD, JKD West, Mesica and GIA appeared at the hearing and, on this same day, JKD, JKD West and Mesica filed a second Motion for Protective Order or, Alternatively, For Intervention and Request for Oral Hearing. At the May 29 hearing, the State Court obtained agreement from GIA and the two parties to the State Court Case that all requested GIA documents would be produced for attorneys' eyes only. An agreed order regarding this production of documents had not been signed at the time of the filing of Plaintiffs' Response to the motion that is now before this Court. Further, the State Court Case has been continued due to the suspended depositions.

The Media

On May 8, 2008, Mr. Chaim Even-Zohar published an article in DIB Online that details both this action and the State Court Case. Immediately after the article appeared, Plaintiffs' counsel emailed a letter to Mr. Zohar about the case. In an article the next day, Mr. Zohar attached the entire letter. The letter is characterized by the author as an attempt to clarify "some of the factual inaccuracies regarding the Federal 'Pink Diamond' case" that were arguably present in the May 8 article and presents some of the same "arguments" and testimony that Plaintiffs presented in the summary judgment briefs to this Court.

On May 22, Mr. Zohar published another article entitled, "Truth and Justice - No Blackmail or Extortion." In this article, according to Plaintiffs, DIB Online "jumps on the JKD

-5-

bandwagon and quickly parrots the name-calling of extortionist and blackmailer, words used by JKD, and cites to the confidential settlement demand letter that Plaintiffs sent to JKD's counsel on April 26, 2008."

### Relevant Legal Provisions

"Civil contempt… is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949). The district court may fashion the remedy for civil contempt and many remedies are available including the doing of specified acts, incarceration and fine. *McComb*, 336 U.S. at 193-94; *United States v. Conces*, 507 F.3d 1028, 1043-44 (6th Cir. 2007).

A district court may hold a litigant in a civil proceeding in contempt for failure to comply with an order of the court and specifically with a discovery order. *Conces*, 507 F.3d at 1041. The order violated must be "definite and specific" and "ambiguities must be resolved in favor of persons charged with contempt." *Id.*(citing *Grace v. Center for Auto Safety*, 72 F.3d 1236, 1241 (6th Cir. 1996)).

A motion for an order to show cause may be filed if a party believes that another party is not complying with an order of the court. *See Reynolds v. Roberts*, 207 F.3d 1288, 1298 (11th Cir. 2000). If the motion states a case of non-compliance, the court may order the non-moving party to show cause as to why he or she should not be held in contempt and may schedule a hearing for that purpose.[2] *Id.*

---

[2]The court's show cause order may require the non-movant to file a response and, depending upon that response, a hearing may be unnecessary. *Reynolds*, 207 F.3d at n19.

The moving party must prove by clear and convincing evidence that the party to be held in contempt violated an order of the court. *Conces*, 507 F.3d at 1042. The test for whether an order of the court has been violated is an objective standard that asks whether the alleged contemner has failed to take all reasonable steps within its power to comply with the court's order. *Nettis Environmental Ltd. v. IWI, Inc.*, 46 F. Supp.2d 722, 726 (N.D. Ohio 1999). It is not a subjective good faith standard, and there is no requirement of willfulness to establish civil contempt. *Id.*

At the hearing, if the movant proves what has been alleged in the motion, the court hears from the non-movant. *Id.* The court then decides whether the non-movant has complied with the court order and, if not, the necessary sanctions. *Id.* Finally, an attorney whose motion to show cause is brought in bad faith may be subject to sanctions. *Knafel v. Pepsi Cola Bottlers of Akron, Inc.*, No. C83-3534-A, 1987 U.S. Dist. LEXIS 16918 (N.D. Ohio Feb. 4, 1987).

## Analysis

JKD now argues that Plaintiffs are not complying with two of this Court's orders, the first issued on March 29, 2007, and the second issued on January 7, 2008. As a result, JKD has filed a motion for an order for Plaintiffs to show cause as to why they are not in compliance with this Court's orders. However, JKD's motion does not state a case for noncompliance.

JKD first argues that Plaintiffs are not complying with this Court's March 29, 2007 Order striking paragraphs 4 and 14 of their Complaint because Plaintiffs have pursued information related to paragraphs 4 and 14 and because Plaintiffs have allegedly resorted to "blackmail and extortion" in attempting to gain a settlement. Paragraphs 4 and 14 discuss a "bribe-for-cert upgrade" scandal and the Parties' alleged involvement in the alleged scandal.

-7-

Plaintiffs have allegedly pursued discovery regarding the information in paragraphs 4 and 14 in the State Court Case. Yet, there are no allegations that Plaintiffs have pursued discovery regarding information in paragraphs 4 and 14 in this case. Of course, this Court's March 29, 2007 Order applies to this case. Further, this Court has been given no acceptable reason to become involved in a determination as to what is discoverable in the State Court Case.[3]

As to the alleged "blackmail and extortion," all Parties are reminded that this matter will be tried in this Court of law and not in the media and attempts to try this case in the media are looked upon with disfavor, particularly to the extent that these efforts may impact a trier-of-fact's ability to fairly adjudicate this matter. Further, what is said in negotiations toward a settlement of this matter is not, at least thus far, for this Court to consider.

JKD also alleges that Plaintiffs are not complying with this Court's order of January 7, 2008 which essentially reminded the Parties that the discovery deadline in this matter had passed and no further discovery in this matter was authorized. There is no allegation that Plaintiffs have violated the discovery deadline by seeking additional discovery in this matter.

Therefore, JKD has not stated a case for noncompliance with either this Court's March 29, 2007 or this Court's January 7, 2008 Orders. No further action by this Court is necessary at this time. JKD's motion for an order to show cause is not well founded and is hereby OVERRULED.

JKD also seeks an order in limine barring any attempt by Plaintiffs to introduce certain

_____

[3]State courts should be free to try state cases without interference from federal courts. *Younger v. Harris*, 401 U.S. 37, 43 (1971). There are four recognized exceptions to this standard: (1) where a federal court is expressly authorized to act by Congress; (2) where a federal court may need to act in aid of its jurisdiction; (3) were a federal court must do so to protect or effectuate its judgments; and (4) where an individual about to be prosecuted in state court can show that he or she will, if the state court proceeding is not enjoined, suffer irreparable damages. *Id.*

evidence into this case. The purpose of a motion in limine is to allow the court to rule on issues pertaining to evidence in advance of trial to avoid delay and ensure an even-handed and expeditious trial. *Morrison v. Stephenson*, No. 2:06-cv-283, 2008 U.S. Dist. LEXIS 12308 at *2 (S.D. Ohio Feb. 5, 2008). However, courts are generally reluctant to grant broad exclusions of evidence in limine because courts are almost always better situated during the actual trial to assess the value and relevance of evidence. *Id.*(citing *Koch v. Koch Indus., Inc.*, 2 F. Supp.2d 1385, 1388 (D. Kan. 1998), *aff'd*, 203 F.3d 1202 (2000)). To that end, a court should not make a ruling in limine unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible. *Id.*

In this case, JKD cites no proof that Plaintiffs have introduced such evidence into this case, at least in any fashion that would impact the factual and legal decisions yet to be made. Therefore, JKD's motion for an order in limine is premature. It is, therefore, OVERRULED without prejudice to refiling if and when appropriate.

## JKD'S MOTION FOR SHOW CAUSE ORDER
## REGARDING COURT'S DECEMBER 29, 2007 ORDER

JKD has filed a second motion for a show cause order. (Doc. #113). This time JKD argues that Plaintiffs have violated this Court's December 29, 2007 Order. This motion is fully briefed and now ripe for decision.

The factual background relevant to this motion will first be set forth followed by an analysis of the motion. The law relevant to motions for show cause orders and civil contempt is as set forth above.

### Factual Background

JKD served its First Request for Production of Documents on August 9, 2007. Request

number 3 therein asked for copies of any and all financial statements and tax returns for Plaintiffs from 2006 to the present.

Plaintiffs responded to JKD's First Request for Production of Documents on October 8, 2007. The response to request number 3 was:

> Tax returns for Stafford Jewelers and John M. Stafford will be provided when available. As to the remainder of this request, objection: the information sought is neither relevant nor calculated to lead to the discovery of admissible evidence.

During his deposition on November 26, 2007, Stafford testified that he had periodic financial statements for his business. (Deposition of John Stafford ("Stafford Dep.") 223 Nov. 26, 2007.) However, specific years were not discussed. (Id.)

On November 29, 2007, JKD's counsel wrote to Plaintiffs's counsel and discussed Plaintiffs' counsel's objections to the production of financial statements. On December 6, 2007, Plaintiffs' counsel responded that she had obtained the requested financial records and would provide them subject to a protective order that makes them for "attorneys' eyes only."

However, counsel were unable to resolve the terms of a protective order and how restrictive those terms should be. This conflict was then presented to a Magistrate.

On December 29, 2007, the Magistrate approved an Entry Memorializing Results of Discovery Conference. (Doc. #72.) Therein, based upon a telephone conference conducted by the Magistrate on December 27, 2007, the Magistrate found that, pending certain amendments to the Protective Order, Plaintiffs would furnish tax returns and other financial documents to JKD's counsel, Mr. Chappelear, who would retain them on an "attorneys-eyes-only" basis pending further order of the Court.

Following the telephone conference on December 27, 2007, Plaintiffs produced the

income tax returns but not the financial statements. JKD's counsel immediately asked again for the financial statements. On December 31, 2007, Plaintiffs' counsel responded that "[w]e are attempting to determine if there are any financial statements for 2006. If there are, we will promptly send them to you."

After having not received the financial statements or any indication regarding their status, JKD's counsel, on May 1, 2008, and again on May 28, 2008, asked for the financial statements. On June 2, 2008, Plaintiffs' counsel responded that no such financial statements exist. JKD's motion for an order to show cause regarding the production of the financial statements was then filed on June 20, 2008.

Plaintiffs' counsel has submitted an Affidavit in response to JKD's motion for a show cause order. Therein, Plaintiffs' counsel testifies that she took reasonable steps to comply with the Court's December 27, 2007 Order. "To the best of my knowledge, no such 'financial statements' for the requested time period exist, and to the best of my knowledge, there are not 'financial statements' for 2006 to the present." (Affidavit of Diane F. Marx ("Marx Aff.") ¶ 7 June 24, 2008.) She further testifies that, "I have never had in my possession, custody or control U.S. Diamond & Gold Jewelers, Inc. financial statements for the years 2006 or 2007." (Id. ¶ 8.)

<u>Analysis</u>

In this instance, JKD's Motion states a case for non compliance. Stafford testified that  he had periodic financial statements for his business. Plaintiffs' counsel initially indicated that she had obtained the requested financial records and would provide them subject to a protective order that makes them for "attorneys' eyes only." It is unclear as to whether "the requested financial records" includes financial statements for the years 2006 and/or 2007.

Plaintiffs' counsel, not Stafford, then testified that, to the best of her knowledge, there are not financial statements for the requested time period and that she had never had U.S. Diamond & Gold Jewelers, Inc. financial statements for the years 2006 or 2007 in her possession, custody or control.

However, it is Plaintiffs and not Plaintiffs' counsel who must produce evidence in support of a claimed inability to comply with this Court's discovery Order. *See Conces*, 507 F.3d at 1043. Plaintiffs must make this showing "categorically and in detail." *Id.* (citing *Glover v. Johnson*, 934 F.2d 703, 708 (6th Cir. 1991)). It is Plaintiffs who must "categorically and in detail" show that they are unable to provide the requested 2006 and 2007 financial statements and they have not yet done so.

Therefore, Plaintiffs are ordered to show cause as to why they should not be held in contempt of this Court's discovery Order requiring them to provide financial statements for the years 2006 and 2007 to JKD's counsel. A hearing for this purpose will be conducted at 9:30 a.m. on August 21, 2008, in Courtroom Number 2, Federal Building, Dayton, Ohio. Finally, if Plaintiffs claim that it is impossible to produce the evidence, they have the burden of production. *United States v. Rylander*, 460 U.S. 752, 757 ((1983).

### PLAINTIFFS' MOTION TO STRIKE

The third motion that is now before the Court is Plaintiffs' motion to strike portions of the Affidavits of Moses Lenzky ("Lenzky") and Zuri Mesica ("Mesica") because those Affidavits are expressly contradicted by Mesica's May 23, 2008 deposition testimony. (Doc. #109.) This motion is also ripe for decision.

Mesica was deposed on May 23, 2008 in the State Court Case. During that deposition, he

-12-

testified regarding communications that he had with Stafford regarding the Pink Diamond.

The Plaintiffs in this case now argue that Mesica's deposition testimony in the State Court Case "exposes blatantly false representations made by JKD to this Court." Specifically, Plaintiffs argue that JKD has represented to this Court that it had no knowledge that Stafford was shipping the Pink Diamond but Mesica's testimony shows that JKD did have such knowledge.

The relevant portion of Mesica's deposition testimony in the State Court Case is as follows:

Q.      Any communication that you've had with John Stafford pertaining to the Pink Diamond, I'd like to know about it so we know what it is that you've been listed as a trial witness on.

A.      John called me one day and he told me that he had this Pink Diamond that he wants us to buy. And I asked him, "does it have a certificate?" He said, "No." I questioned how come it doesn't have a certificate because how can you tell if a diamond is real and if it's really pink or not really? He said, "Oh, no. I've had it a few years. I put it on the side, and now I'm going through a divorce, I need some money. I want to sell it, and I want to pay my wife off with that." I said "Yeah, but a stone like that has to have a certificate." He said, "No, I don't have it. You just look at it, and if you like it, you put it in - - to certify it, and whatever the certificate will come, we'll negotiate the price." I said, "If you want to send it, send it." But anyway, I cannot tell if it's a real diamond or not and it's not Julius Klein's, so send it to New York. They look at it, and if they put it for certificate and it comes pink like you said, or whatever, we will consider buying it.

Q.      Okay. Approximately when did John call you and say that he had this Pink Diamond?

A.       Somewhere in February 2006.

* * *

Q.      Well, with regard to certifications, what did you say Julius Klein, New York could do?

A.      I told him, "You send it to Julius Klein, then we'll submit it for a certificate. Then after we get a certificate, we will determine - - after the

certificate, we'll determine if the stone is real. If it's not treated. If it's fancy pink or it's fancy intense pink, because it makes a big difference in the price. Then if the price is right, we will consider buying it, like we do normally."

Q.   As of February 2006, what was your understanding of how Julius Klein, New York would go about getting a certificate?

A.   There's only one way, to submit it.

Q.   Where?

A.   To GIA.

Q.   After you spoke with John, did you end that call with the understanding that he was going to go ahead and send it to New York, or did you end it by saying, "let me talk to New York, see if they have any interest and get back to you."

A.   No, he said he's going to send it. I – you have to understand that John Stafford is a lot of talk. So he can call you and tell you something I'm going to do, ba, ba, ba, ba, ba, and then he doesn't do it. So if he sends it, New York will receive it. They will look at it. If he didn't send it, God bless him.

Q.   Okay, When you finished the call with John, did you contact anyone in New York to say this Pink Diamond might be on its way?

A.   I probably did. I spoke with New York and told them it might be.

Q.   Do you have a recollection of doing that?

A.   I think I did. I think I might have done something. I might have had the stone sent to them to review.

Q.   And who do you believe you spoke to?

A.   If I spoke to someone, probably it was with Martin or maybe Sal, because he's supposed to send something else with that.

Q.   Okay. So as you sit here today, giving your testimony under oath, you have no specific memory of a conversation with anyone in New York, telling them that John Stafford might be sending this Pink Diamond?

-14-

A.  No. I said I did probably told them that he might send the Pink Diamond. And when they get it, to look at it or show it to Motti or Motti will look at it and let me know.

Q.  Okay. But you said it might have been Motti; it might have been somebody else?

A.  I might have been Motti. It might have been Sal. I don't recall exactly who I talked to, but I remember they were aware that he's supposedly shipping the box.

* * *

A.  I think it was Sal, because at the time, he wanted to send a necklace that he purchased for us for volume again. So Sal is the right person to send it to because he deals with jewelry. I told him - - probably I told him, by the way, he might send the stone, a pink one. If yes, show it to Motti.

Q.  Okay. Do you recall anything specifically that Sal said to you during this conversation?

A.  No.

From this testimony, the Plaintiffs conclude that JKD New York knew that Stafford was shipping the Pink Diamond to it for certification and, possibly, purchase by JKD; that it was JKD's practice in February of 2006, to submit diamonds to GIA for certification; and that certification was necessary because no one would purchase a colored diamond that was not certified. Plaintiffs also conclude from this testimony that, in February 2006, there was at least a contract for JKD to submit the Pink Diamond to GIA for certification.

Plaintiffs now wish to strike the following affidavit testimony submitted in this case in support of motions for summary judgment that have already been decided:

1. Paragraph 6 of the Lenzky Declaration dated January 29, 2007, which states:

Finally, plaintiffs allege that by virtue of their alleged shipment of the Pink Diamond to JKD's offices in New York City on February 13, 2006, JKD and Stafford's Jewelers purportedly entered into a contract under which JKD agree that

-15-

it would either purchase the Pink Diamond, or certify it and return it to Ohio. As demonstrated in JKD's accompanying reply memorandum of law, neither plaintiffs' alleged shipment of the Pink Diamond, nor the written "memorandum" (Stafford Aff. Exhibit 7) which allegedly accompanied the Pink Diamond as part of the shipment (but which, unlike the Pink Diamond itself, JKD never received), constituted the "contract" they claim. Moreover, JKD did not enter into, and could not have entered into any such contract, because, among other things, JKD does not have a laboratory and is not in the business of certifying diamonds.

2. Paragraph 14 of the Lenzky Affidavit dated January 30, 2008, which states:

No one at JKD ever entered into a contract with U.S. Diamond and Gold concerning a pink diamond. JKD never agreed to purchase a pink diamond from U.S. Diamond and Gold, or to certify a pink diamond from U.S. Diamond and Gold, or to certify a pink diamond and return it to U.S. Diamond and Gold.

3. Paragraph 7 of the Lenzky Affidavit dated February 25, 2008, which states:

JKD New York did not know that plaintiffs were shipping the Pink Diamond on February 13, 2006.

4. Paragraph 7 of the Lenzky Affidavit dated March 10, 2008, which states:

JKD New York did not know that plaintiffs were shipping the Pink Diamond on February 13, 2006.

5. Paragraph 11 of the Mesica Affidavit dated March 10, 2008, which states:

Mr. Stafford insisted that JKD take a look at the Pink Diamond.

6. Paragraph 13 of the Mesica Affidavit dated March 10, 2008, which states:

I never requested that Mr. Stafford send the Pink Diamond to JKD.

For their legal support of this Motion, Plaintiffs cite the case of *O'Brien v. Ed Donnelly Enterprises, Inc.*, No. 2:04-CV-00085, 2007 U.S. Dist. LEXIS 92973 (S.D. Ohio Dec. 18, 2007). Therein, the court sets forth the three mandatory requirements for affidavits that are used in support of, or in opposition to, a motion for summary judgment from Fed. R. Civ. P. 56(e): such affidavits must be made on personal knowledge; must set forth such facts as would be admissible

-16-

in evidence and must show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. 2007 U.S. Dist. LEXIS 92973 at *7. Further, "[a] party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts **his** earlier deposition testimony." *Id.* at *7-8 (citing *Penny v. UPS*, 128 F.3d 408, 415 (6th Cir. 1997))(emphasis added). In *O'Brien*, the court was considering whether to allow deposition testimony that conflicts with **prior** testimony[4] where such conflicting testimony clearly would not be allowed if it were contained in an affidavit. *Id.* at *10. The court decided not to allow the later conflicting testimony. *Id.* Plaintiffs also present the legal argument that it is permissible, under certain circumstances, to use a deposition in one action as both substantive evidence and for purposes of impeachment in another action. *Dykes v. Raymark Indus., Inc.*, 801 F.2d 810 (6th Cir. 1986), *cert. denied*, 481 U.S. 1038 (1987).

Plaintiffs' Motion To Strike Portions of the Affidavits of Moses Lenzky and Portions of Affidavit of Zuri Mesica.(doc. # 109) is not well taken. There are, at a minimum, four reasons why this Motion is not well taken.

First, the Motion is no longer relevant because it involves a claim that has already been dismissed for reasons not relating to this Motion. This Motion is in regard to Plaintiffs' attempt to establish a breach-of-contract claim but Plaintiffs' breach-of-contract claim has been dismissed based upon Ohio's statute of frauds. (Doc. # 112.)

Plaintiffs' breach-of-contract claim is for breach of an alleged contract to purchase or certify the Pink Diamond and Ohio law requires that contracts for the purchase of goods valued at five hundred dollars or more be in writing and signed by the parties. In this case, there is no

---

[4]The prior testimony was given in both the case before the court and in another case.

-17-

evidence of a written contract signed by the parties.

Plaintiffs now argue that they have made a separate breach-of-contract claim for certification of the diamond. However, Plaintiffs have made only one breach-of-contract claim and that contract includes purchase of the Pink Diamond. Count Two of Plaintiffs' Complaint is captioned, "Breach of Contract" and not Breach of Contracts. Further, paragraph 44 of Plaintiffs' Complaint alleges that Plaintiffs entered into **a** contract with JKD when it shipped the Pink Diamond to JKD New York to either purchase or certify. This paragraph does not allege that Plaintiffs entered into more than one contract when they shipped the Pink Diamond. Also, paragraph 45 of Plaintiffs' Complaint alleges that JKD breached said contract. This paragraph does not allege that JKD breached multiple contracts. Since the alleged single contract includes the possible purchase of the Pink Diamond, it requires a writing signed by the parties.

The second reason why Plaintiffs' Motion is not well taken is that it is no longer relevant because it was not necessary to consider the statements that Plaintiffs wish to strike when deciding the pending Motions for Summary Judgment. Statements regarding the establishment of an oral contract are not relevant when a writing is required.

The third reason why Plaintiffs' Motion is not well taken is that the statements that Plaintiffs wish to strike are not contradictory to the statements Mesica made in the deposition taken in the State Court Case. In the deposition testimony identified by Plaintiffs', with the addition of some not identified by Plaintiffs, Mesica testified that if Stafford sent the Pink Diamond to New York and if JKD sent it out for certification and if it came back certified as a pink diamond, JKD would consider buying it. He told Stafford that he could send the diamond to New York but denied knowing whether Stafford was really going to send the diamond to New

-18-

York. He further testified that he "probably" told someone in New York that Stafford might send the diamond but he does not remember for sure to whom he spoke and what may have been said. Those that Mesica says he may have talked to are not the Affiants whose testimony Plaintiffs want to strike. Finally, Mesica never testified that JKD entered into a contract with Plaintiffs to either purchase or certify a diamond or that JKD had a laboratory, or that JKD was in the business of certifying diamonds.

The fourth reason why Plaintiffs' Motion is not well taken is that the case law they cite does not support their argument to strike. In *O'Brien*, the court was addressing striking testimony that conflicts with earlier given testimony. In this case, Plaintiffs seek to strike testimony that was given before instead of after the allegedly conflicting testimony. Also, in *O'Brien*, the court was addressing striking conflicting testimony that was given by the same individual. In this case, most of the testimony that Plaintiffs wish to strike was not given by the same person whose testimony forms the basis for their Motion To Strike.

While the alleged conflicts identified by Plaintiffs do not merit granting a motion to strike, they, of course, might possibly be further developed at trial. For the reasons discussed above, Plaintiffs' Motion To Strike Portions of the Affidavits of Moses Lenzky and Portions of Affidavit of Zuri Mesica.(doc. # 109) is OVERRULED. Finally, because Plaintiffs' Motion To Strike is not well taken, their request for reasonable attorneys' fees with regard to this Motion is also not well taken.

## PLAINTIFFS' MOTION TO REOPEN DISCOVERY

The fourth motion before the Court is Plaintiffs' Motion To Reopen Discovery for the Limited Purpose of Deposing GIA. (Doc. #111.) This Motion too is fully briefed and ripe for

decision.

Plaintiffs want to reopen discovery in this matter for the limited purpose of deposing the GIA. The issue Plaintiffs wish to explore is whether JKD had GIA privileges to obtain a certificate for the Pink Diamond. If, according to Plaintiffs, JKD did not have privileges to obtain a certification from the GIA, then JKD could not have fulfilled its contract with Plaintiffs regarding certification or purchase of the Pink Diamond. In other words, Plaintiffs argue that certification of the Pink Diamond was an essential term of the contract.

The Court has broad discretion over discovery matters. *Trepel v. Roadway Express, Inc.*, 194 F.3d 708 (6th Cir. 1999). This broad discretion applies to reopening discovery. *Lowe v. Hamilton County Job & Family Services*, No. 1:05-cv-117, 2007 U.S. Dist. LEXIS 37257 at *8 (S.D. Ohio May 22, 2007). The party seeking to reopen discovery must indicate to the court the need for more discovery, what material facts it hopes to uncover and why it has not previously discovered the information. *Id.*

Courts consider five factors when determining whether to reopen discovery. *Morgan v. Gandalf, Ltd.*, 165 Fed. Appx. 425, 431 (6th Cir. 2006); *United States v. Labine*, 73 F.Supp.2d 853 (N.D. Ohio 1999); *Lowe*, 2007 U.S. Dist. LEXIS 37257 at *8. The five factors are: (1) whether the movant has demonstrated good cause for reopening discovery; (2) whether the need for additional discovery was precipitated by the neglect of the movant or by the party opposing the motion to reopen; (3) the specificity of the discovery that is sought; (4) the relevance of the discovery being sought; and (5) whether the party opposing the motion to reopen discovery will be prejudiced. *Id.* Finally, courts have reopened discovery prior to ruling on motions for summary judgment and later in the process only weeks before trial. *Morrison v. Stephenson*, No. 2:06-cv-

-20-

283, 2008 U.S. Dist. LEXIS 12308 at *15 (S.D. Ohio Feb. 5, 2008); *Lowe*, 2007 U.S. Dist. LEXIS 37257; *Fisher v. Harden*, No. 2:00-cv-01377, 2006 U.S. Dist. LEXIS 39744 (S.D. Ohio June 15, 2006).

The discovery deadline in this case was December 31, 2007. Prior to the discovery deadline, Plaintiffs' allegations regarding the GIA were struck. Also, according the JKD, Plaintiffs failed to request or take the deposition of any of JKD's witnesses or of anyone from GIA prior to the discovery deadline. Plaintiffs then unsuccessfully attempted to extend this deadline. Plaintiffs now, more than six months following the discovery deadline, argue that testimony that they have since obtained in the State Court Case gives cause for reopening discovery in this case.

In this case, the Parties have presented argument regarding all five of the factors identified above. However, the Court need only address one of them - relevance.

The reason given by Plaintiffs to reopen discovery is to determine whether JKD could have fulfilled its contract with Plaintiffs regarding certification or purchase of the Pink Diamond. However, this discovery is irrelevant because, as discussed in detail above, Plaintiffs' breach-of-contract claim has been dismissed.

For the first time in their Reply Memorandum, Plaintiffs mention that the discovery that they request is relevant to their negligence claim because it may show that, if JKD did not have privileges to obtain a GIA certification, then JKD did not exercise ordinary care by agreeing to receive the Pink Diamond and by agreeing to deliver it to GIA for certification. However, this argument is not well taken for two reasons. First, there was no enforceable agreement as more fully set forth above. Second, the Court fails to see why whether JKD had GIA privileges is

relevant to whether JKD exercised ordinary care in the act of allegedly receiving the Pink Diamond.

Also for the first time in their Reply Memorandum, Plaintiffs mention that the requested discovery is relevant to their unjust enrichment and conversion claims because the requested discovery may be evidence of a motive to wrongfully retain the Pink Diamond. It may be evidence of a motive to wrongfully retain the Pink Diamond because, according to Plaintiffs, JKD enticed Stafford to send the Pink Diamond by telling him that they could get it certified when they may not have had privileges at GIA to have the Pink Diamond certified. However, this argument too is not well taken for two reasons. First, motive is not an element or a required showing for these claims. Second, the Court fails to see why whether JKD had GIA privileges is relevant to any motive that they may have had to obtain the Pink Diamond.

Finally, for the first time in their Reply Memorandum, Plaintiffs mention that the requested discovery is relevant to their fraud claim. Plaintiffs argue that the requested discovery is relevant because it may show that Mesica's representations to Stafford that he should send the Pink Diamond to New York for GIA certification were made falsely and with knowledge of its falsity. However, this argument too is not well taken. Plaintiffs' fraud claim, which must be pled with specificity, alleged that JKD made false representations concerning the events surrounding the loss of the Pink Diamond, specifically through denials made by "Heim" on February 13, 2006 that JKD had nothing to do with the loss of the Pink Diamond. (Compl. ¶ 64.) Whether JKD had privileges at GIA is not relevant to any denials allegedly made by "Heim" and not relevant to the events surrounding the alleged actual loss of the Pink Diamond.

In sum, Plaintiffs have not shown good cause for reopening discovery because they have

not shown that the requested discovery is relevant to any of the remaining issues in this case. Therefore, Plaintiffs' Motion To Reopen Discovery for the Limited Purpose of Deposing GIA is OVERRULED.

## SUMMARY

JKD's Motion for a show cause order, sanctions and an order in limine (doc. #108) is OVERRULED. JKD has not stated a case for noncompliance with either this Court's March 29, 2007 or this Court's January 7, 2008 Order. Further, JKD's motion for an order in limine is premature and is, therefore, overruled without prejudice to reassertion if and when appropriate.

JKD's second motion for a show cause order (doc. #113) is GRANTED. JKD has stated a case for noncompliance with this Court's December 29, 2007 Order. Plaintiffs are ordered to show cause as to why they should not be held in contempt of this Court's discovery Order requiring them to provide financial statements for the years 2006 and 2007 to JKD's counsel. A hearing for this purpose will be conducted at 9:30 a.m. on August 21, 2008, in Courtroom Number 2, Federal Building, Dayton, Ohio.

Plaintiffs' motion to strike portions of the Affidavits of Moses Lenzky and Zuri Mesica (doc. #109) is OVERRULED. This motion is overruled because it is no longer relevant, because the statements that Plaintiffs wish to strike are not contradictory to the statements Mesica made in the deposition taken in the State Court Case and because the case law they cite does not support their argument to strike.

Finally, Plaintiffs' motion to reopen discovery to depose the GIA (doc. #111.) is OVERRULED. Plaintiffs have not shown good cause for reopening discovery because they have not shown that the requested discovery is relevant to any of the remaining issues in this case.

**DONE** and **ORDERED** in Dayton, Ohio, this Twenty-Ninth day of July, 2008.

**s/Thomas M. Rose**

_____

THOMAS M. ROSE
UNITED STATED DISTRICT JUDGE

Copies furnished to:

Counsel of Record